ESTELLE SEELEY *et al.*

*v.*

JESSE H. BALDWIN *et al.*

*Opinion filed April 17, 1900.*

1. EQUITY—*when equity will not take jurisdiction to construe a deed.* Where only legal titles are involved, equity will not take jurisdiction for the purpose of construing the deed and declaring titles.

2. DEEDS—*evidence of mistake must be clear to warrant reformation.* A deed cannot be reformed in equity after the death of the grantor and the lapse of many years, so as to change the estate granted, except upon clear proof that the alleged mistake was mutual.

3. EVIDENCE—*that grantor wrote deed affords a presumption against mistake.* The fact that the grantor wrote the deed and deliberately employed the words afterwards alleged by the grantee to have been used by mistake, is strong evidence that he intended to grant the character of estate conveyed by the deed.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. OWEN P. THOMPSON, Judge, presiding.

FRANK A. WHITESIDE, for plaintiffs in error.

HENRY C. WITHERS, and THOMAS HENSHAW, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Benjamin Baldwin executed a deed dated February 24, 1858, to the defendant in error Jesse H. Baldwin, for 283¾ acres of land in Greene county, Illinois, conveying the same "unto the said Jesse H. Baldwin and his children, the legal heirs of his body, forever." The said grantee, Jesse H. Baldwin, filed his bill in chancery in the circuit court of said county asking to have the deed construed, and in case the court should so construe the deed that he had any other title than an estate in fee in the lands described therein, alleging that the deed was so made by mistake, and praying that it might be reformed so as to give him such title.

When the deed was made, in 1858, complainant had two children, Leonidas T. Baldwin and Estelle Baldwin, (now Estelle Seeley, one of the plaintiffs in error.) He had been married a second time and afterward had three children, Georgiana M. Ellis, Ida M. Greer and Manford Baldwin. Complainant had mortgaged the lands to Edward T. North to secure a loan of $20,000, and the notes and mortgage had been assigned to Levi T. Whiteside, who had died, leaving Jane Whiteside, his widow, and Etta Griswold, his only child and heir-at-law, owners of the notes and mortgage. The Rosenbaum Bros. Company had recovered a judgment against complainant for $2000. Said children, with their husbands and wives, were made defendants to the bill, together with said owners of the notes and mortgage and judgment creditors. One of the defendants, the son Leonidas T. Baldwin, was insane, and a guardian *ad litem* was appointed for him and filed the usual answer. Manford Baldwin and his wife were de-

faulted, and the rest of the children answered denying that there was any mistake in the deed and setting up *laches*. Jane Whiteside and Etta Griswold answered admitting the averments of the bill except as to the value of the land and the amount of the mortgage indebtedness. After the commencement of the suit the mortgage was foreclosed, and there was due on it something over $13,000. The cause was referred to a master in chancery to take and report the evidence. The court heard the cause upon the evidence so taken, and entered a decree finding that the words used in the deed were so used by mistake, contrary to the terms of purchase and the intent of the grantor, and decreeing that the deed should be reformed and corrected so as to have the force of a conveyance of a fee simple absolute title to complainant.

The facts proved by competent evidence were substantially as follows: Benjamin Baldwin and wife conveyed to his son, the complainant, Jesse H. Baldwin, sixty acres of land and mill property in Warren county, Ohio, as a gift or advancement. In that deed the consideration was expressed as follows: "In consideration of assisting Jesse H. Baldwin (who is my son) to make a living and better his condition in life, have given, and do hereby give, grant and convey to him, the said Jesse H. Baldwin and his heirs forever, the following tract of land and all appurtenances (which is considered worth two thousand dollars.)" Complainant afterward sold said property for $2100, and with that and other means came to this State in 1853 to buy a farm and make a home. The father, Benjamin Baldwin, owned the premises now in question, which were then unbroken prairie and low, wet land. He sold them to complainant at that time for $3700 cash, which was the full market value of the lands. Complainant immediately took possession of the premises and tiled and improved the lands. He has paid all taxes and made valuable and lasting improvements. He built a good brick house on the premises, and out-build-

ings, and has resided on and controlled them ever since. No deed was made at the time of the purchase, in 1853. Benjamin Baldwin was a man of more than ordinary ability, and complainant had perfect confidence in him and awaited his pleasure about a deed. Finally Benjamin Baldwin wrote the deed in question, and, with his wife, signed and acknowledged it and delivered it to the complainant. The deed was his own production, and the words which were alleged to have been a mistake on his part were put in the deed by him. Benjamin Baldwin died in 1864, and his will contained the following provision: "I have given by deed in the State of Ohio land and mill property to my son Jesse H. Baldwin, which he sold and with its proceeds purchased the most of the farm on which he now resides. The land and mill property, together with a piece of land which will be described in item 12 of this will, is all the land that I design to give him to make his share equal." Item 12 of the will devised to complainant eighty acres of land in Greene county, Illinois. On account of the improvements and advance in value of land the lands are now worth over $20,000.

So far as construing the deed is concerned, only legal titles are involved, and equity will not take jurisdiction for the purpose of decreeing what they are. (*Harrison* v. *Owsley*, 172 Ill. 629.) So far as the question of the alleged mistake is concerned, there is no evidence that there was any mistake on the part of the grantor, Benjamin Baldwin. The deed could not be reformed on the ground of mistake, except upon the allegation and clear proof that the mistake was mutual and that the deed did not express the intention of the grantor as well as that of the grantee. (*Emery* v. *Mohler*, 69 Ill. 221.) The fact that the grantor wrote the deed and deliberately employed the words in question is strong evidence that he intended to grant the character of estate conveyed by the deed. There is some other evidence that he did so intend and none that he did not. His will shows that he regarded

this land as in the most part a gift or advancement, because the purchase price came mainly through the Ohio property that he had given complainant. He probably felt that he had some right to limit the estate and expressed his intention in the deed. There is an entire absence of evidence that the grantor did not intend to limit the estate precisely as he did in writing the deed. The fact that the full purchase price of the land was paid would imply that Benjamin Baldwin was to transfer the entire legal title, and if he had not done so there might be an inference of a mistake or fraud on his part, but he did convey the entire title without any reservation or any reversion to him or his heirs. The bill does not allege any fraud on the part of the grantor, and there is no evidence which would justify a finding of that sort. The fact that complainant paid the full purchase price of the property would not be evidence of anything except that the whole title was to be conveyed. Complainant took possession of the premises and has been in such possession for over forty years and has made valuable and lasting improvements, but the title which he had was in entire harmony with these acts. His possession, payment of taxes, making improvements and enjoyment of the rents and profits were incidents of the title actually conveyed by the deed. The finding that the words complained of were inserted in the deed by mistake and contrary to the intention of Benjamin Baldwin is unsupported by anything in the evidence. The deed could not be reformed after the death of the grantor and after such a lapse of time except upon very clear and satisfactory evidence of the alleged mistake, and we do not regard the evidence in this case of that character.

The decree is reversed and the cause remanded to the circuit court for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*