**SHELL OIL CO., Inc., v. MANLEY OIL CORPORATION et al.**

Civil No. 393.

District Court, E. D. Illinois.
March 10, 1941.

Craig & Craig, of Mattoon, Ill., for plaintiff.

Layman & Johnson, of Benton, Ill., for defendants.

WHAM, District Judge.

By this suit plaintiff seeks to enjoin defendants from drilling for oil and gas upon a certain two-acre tract of land located in the Northwest Corner portion of the Southeast Quarter of the Southeast Quarter of Section 24, Township 6 South, Range 2 East of the Third Principal Meridian, Franklin County, Illinois. Plaintiff claims sole right and title to the oil and gas under said two acres and the right to injunctive relief against defendants by virtue of an oil and gas lease given by the surviving husband and heirs of Lou McKemie, deceased, to E. S. Adkins on June 27, 1940, which by said Adkins was assigned to plaintiff.

The defendant Manley Oil Corporation, at the time this suit was brought on February 20, 1941, was drilling an oil well upon said two-acre tract by claim of right under an oil and gas lease dated January 11, 1941, from the defendants J. C. Shoemate and Florence Shoemate, his wife, to the Manley Oil Corporation. Pending the court's decision herein defendants have ceased drilling and the case has been submitted on its merits on plaintiff's complaint and application for a permanent injunction and the respective answers of the defendants.

The common source from whom all parties to this litigation claim title to the oil and gas under the land in question is Thomas M. McKemie, who, it is stipulated, was, on August 27, 1907, the owner in fee of all of the above described quarter, quarter section, including the two acres here in controversy, subject to a prior deed by a former owner by which the underlying coal with right to mine same had been conveyed to the Benton Coal Company.

On August 27, 1907, Thomas M. Mc-Kemie and Lou McKemie, his wife, conveyed to Walter S. Mooneyham the two-acre tract here in controversy by warranty deed in statutory form in which the estate and interest conveyed was described in the following words: "The surface only of a tract of land described as follows, Beginning at the Northwest corner of the South East quarter of the South East quarter of Section 24, Town 6 South and in Range 2 East of the 3rd P. M. thence South 23 rods to the center of the public road as now located, thence East along the center of said public road 14 roads; thence North 23 rods to the North line of said SE¼ SE¼ thence West to the place of beginning containing 2 acres more or less. This deed is made subject to a certain deed to the Benton Coal Company recorded in Deed Record 45 page 10."

By mesne conveyances the title and interest conveyed to Walter S. Mooneyham in and to said two-acre tract by the above described deed from Thomas M. McKemie and wife was acquired by the defendants J. C. Shoemate and Florence Shoemate, as joint tenants, from whom the defendant Manley Oil Corporation holds its oil and gas lease.

On October 7, 1921, Thomas M. Mc-Kemie gave to his wife a quitclaim deed, based upon a consideration of $1 and love and affection, to all of said Southeast Quarter of the Southeast Quarter of said Section 24, together with a number of other tracts of land, and city lots. This quitclaim deed was made subject to all deeds of conveyance theretofore made conveying the coal, oil and gas and other underlying minerals but did not except from the conveyances the two-acre tract here in controversy nor allude to the prior deed to Walter S. Mooneyham.

Under the foregoing facts, the plaintiff is entitled to an injunction if, and only if, the right to the oil and gas under said two-acre tract remained in Thomas M. McKemie after he gave to Walter S. Mooneyham the warranty deed above described, dated August 27, 1907. Did said deed convey to Walter S. Mooneyham the entire fee in said land, except that which had been conveyed by the prior coal deed to which it was made subject, or did it convey to him an estate that was so limited by the words "the surface only" that it included none of the minerals below the top soil, leaving in Thomas M. McKemie all mineral rights, including the oil and gas, except the coal rights theretofore conveyed?

Plaintiff contends that the words of the deed are so clear in meaning and so plainly limit the conveyance to the top soil that

the instrument must be interpreted solely from the language therein found without consideration of extrinsic evidence. Defendant contends that the word "surface" and the words "surface only" when used in a deed made subject to a prior conveyance of a specific mineral, such as coal, not only lack precision in meaning but have by custom and usage acquired a meaning that is broader than their dictionary definitions and, properly construed, carry to the grantee all of the interest the grantor has left in the land; that extrinsic evidence is admissible to show such custom and usage and otherwise to show the intended meaning of the words as used by the parties to the deed.

■ The meaning of said deed and the construction of the words and terms therein used are governed by the law of Illinois. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876.

■ It has been said by the Supreme Court of Illinois that "the nature and quantity of the interest granted by a deed are always to be ascertained by the instrument itself and are to be determined as a matter of law, and the intention is that which is apparent and manifest in the instrument itself." Duffield v. Duffield, 268 Ill. 29, 108 N.E. 673, 674, Ann.Cas.1916D, 859; Lehndorf v. Cope, 122 Ill. 317, 13 N.E. 505, 508; Duffield v. Duffield, 293 Ill. 300, 127 N.E. 709; Woods v. Seymour, 350 Ill. 493, 183 N.E. 458. Further, that where there is no ambiguity in the terms used, or where the language of the instrument has a settled meaning, the instrument itself is the only criterion of the intention of the parties, and its construction is not open to oral evidence. Fowler v. Black, 136 Ill. 363 at 373, 26 N.E. 596, 11 L.R.A. 670; Butterfield v. Sawyer, 187 Ill. 598 at 602, 58 N.E. 602, 52 L.R.A. 75, 79 Am.St.Rep. 246; Morton v. Babb, 251 Ill. 488, 491, 96 N.E. 279; Voorhees v. Blum, 274 Ill. 319, 323, 113 N.E. 593.

■ But where the terms used in a deed are ambiguous and have no settled meaning, extrinsic evidence of the facts and circumstances surrounding the transaction in which the deed was given, as well as evidence of the contemporaneous or subsequent acts of the parties, is admissible to enable the court to ascertain the intention of the parties to the deed, which, if consistent with the language used, controls the construction to be placed upon the deed. Magnolia Petroleum Co. v. West, 374 Ill. 516, 30 N.E.2d 24; Williams v. Swango, 365 Ill. 549, 555, 7 N.E.2d 306; Goodwillie v. Commonwealth Electric Co., 241 Ill. 42, 89 N.E. 272; Carter Oil Co. v. Watson, 7 Cir., 116 F.2d 195 at 198; Brewster v. Cahill, 199 Ill. 309, 65 N.E. 233; Bradish v. Yocum, 130 Ill. 386, 23 N.E. 114; Miller v. Mowers, 227 Ill. 392, 81 N.E. 420.

In Magnolia Petroleum Company v. West, supra [374 Ill. 516, 30 N.E.2d 26], the court said: "The primary purpose of the construction of a deed is to ascertain the intention of the parties, to be gathered from the instrument as a whole, giving effect to every word and rejecting none as meaningless or repugnant, if this can be done without violating a positive rule of law. Woods v. Seymour, 350 Ill. 493, 183 N.E. 458; Lehndorf v. Cope, 122 Ill. 317, 13 N.E. 505. The words need not be construed literally or strictly, since greater regard is accorded to the real intention as manifested in the entire deed than to any particular word or arrangement in its expression. Kearney v. Kirkland, 279 Ill. 516, 117 N.E. 100; McCoy v. Fahrney, 182 Ill. 60, 55 N.E. 61. In order to understand the language in the sense intended by the parties, the court will consider the facts they had in mind, including their situation, the state of the property, and the objects to be attained. Goodwillie Co. v. Commonwealth Electric Co. 241 Ill. 42, 89 N.E. 272; Waller v. Hildebrecht, 295 Ill. 116, 128 N.E. 807, 809."

Plaintiff insists that the word "surface" has been given a fixed legal meaning by the Supreme Court of Illinois as constituting the superficial part of the land that lies over the minerals and that the Supreme Court of Illinois has definitely determined that surface does not include the minerals. In support of this position plaintiff cites the following cases: Morris v. Saline County Coal Co., 211 Ill.App. 178, 179; Kinder v. LaSalle County Coal Co., 301 Ill. 362-364, 133 N.E. 772; Fowler v. Marion & Pittsburg Coal Co., 315 Ill. 312-314, 146 N.E. 318; Big Creek Coal Co. v. Tanner, 303 Ill. 297-301, 135 N.E. 433; Manning v. Frazier, 96 Ill. 279-285; Ames v. Ames, 160 Ill. 599, 600, 43 N.E. 592; McConnell v. Pierce, 210 Ill. 627-635, 71 N.E. 622; Uphoff v. Trustees of Tufts College, 351 Ill. 146-154, 184 N.E. 213, 93 A.L.R. 1224.

■ An examination of these cases discloses no discussion or interpretation of the word "surface" when used in a deed conveying land. They do clearly establish that under the law of Illinois the minerals and each specific mineral underlying land may be severed from the remainder of the land and conveyed or reserved as a separate estate in fee. In reading these decisions one is impressed by the nonrigid meaning and application given the term "surface". In the cases in which all the minerals had been severed from the remainder of the land, the court stated that two separate estates in fee existed, one, the minerals, and the other, the surface. Ames v. Ames, supra; Uphoff v. Trustees of Tufts College, supra; McConnell v. Pierce, supra; Kinder v. LaSalle County Coal Co., supra. In other cases in which only the coal with right to mine same had been conveyed, the court in like manner said two separate estates in fee existed, one the coal, and the other the surface. Big Creek Coal Co. v. Tanner, supra; Fowler v. Marion & Pittsburg Coal Co., supra; Morris v. Saline County Coal Co., supra. Obviously, the estate characterized in the last mentioned cases as "surface" included all the remainder of the land except the coal that had been severed.

■ While such broad use of the word "surface" by the courts may have arisen, in part, from the lack of need for precision in the terminology chosen, such use may also show the influence of the common law conception which gave rise to the maxim, Cujus est solum ejus est usque ad coelum et ad inferos (Ames v. Ames, supra), which has been translated, "To whomsoever the soil belongs, he owns also to the sky and to the depths." 17 C.J. 391, note 67.

It is quite clear that no statute or court decision in Illinois supplies the "rule of decision" in this case. Nor have the words "surface" or "surface only", when used in a deed conveying land as descriptive of the estate conveyed, acquired a settled meaning in this state.

The courts in other jurisdictions are not in agreement upon the meaning of the term "surface" as used in contracts, wills and deeds of conveyance. See annotation 31 A.L.R. 1530 to 1533. In some jurisdictions "surface", as used in conveyances, has been held to mean that part of the land capable of being used for agricultural purposes. Yandes v. Wright, 66 Ind. 319, 32 Am.Rep. 109; Smith v. Jones, 21 Utah 270, 60 P. 1104. In other jurisdictions it is held that a conveyance of the "surface" by contract, will or deed, where a specific mineral has been reserved, excepted or transferred to another person, conveys not only the outer shell but all the underlying minerals not reserved, excepted or transferred. Bogart v. Amanda Consol. Gold Min. Co., 32 Colo. 32, 74 P. 882; Myher v. Myher, 224 Mo. 631, 123 S.W. 806; Dolan v. Dolan, 70 W.Va. 76, 73 S.E. 90, Ann.Cas.1913D, 125; Ramage v. South Penn Oil Co., 94 W.Va. 81, 118 S.E. 162, 31 A.L.R. 1509; Anderson v. Pryor, 51 Ohio App. 35, 199 N.E. 364.

No case has been called to my attention in which the meaning of "surface" as used in a deed was under consideration and in which the court has refused to receive extrinsic evidence as an aid to construction.

In the typical case of Ramage v. South Penn Oil Co., supra, the West Virginia Supreme Court of Appeals held that the term "surface", when used as the subject of a conveyance, is not a definite one capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it; and in determining its meaning regard may be had not only to the language of the deed in which it occurs, but also to the situation of the parties, the business in which they were engaged, and to the substance of the transaction. The opinion in that case is enlightening in its discussion of various items of extrinsic evidence considered pertinent as throwing light on the intended meaning of the word "surface", as used in the deed in that case.

■ I have no doubt that the extrinsic evidence offered in the case now before the court and received subject to objections was properly received and that the objections thereto must be overruled.

Turning to the evidence in the case outside the face of the deed, it appears that in 1907 when the deed in question was given, coal was the only mineral of commercial value known to underlie the soil in Franklin County. Oil and gas had not been discovered and was not discovered until a comparatively recent date. There is no evidence in the record which tends to disclose or to justify a purpose on the part of the grantor to retain any portion of the land not already conveyed at the time he gave the deed.

The acts of the grantor subsequent to the giving of the deed which should be noticed

as tending to show that he claimed some right in the land after he gave the deed are as follows: (1) In 1918 he gave a mortgage upon the entire quarter quarter section to the Newton State Bank and Trust Company and failed to except the two acre tract. (2) In 1921 he gave a quitclaim to his wife for a consideration of love and affection from which he failed to except the two acres. But by that deed he quitclaimed many tracts covering large areas and it is quite reasonable to suppose that the two-acre tract here in question, forming a part of a larger tract, was included by oversight or as being too inconsequential to notice. (3) On July 18, 1922, this oversight in the quitclaim deed to Lou McKemie was corrected by a quitclaim deed from Lou McKemie, joined in by Thomas M. McKemie, her husband, to J. A. Dalbey, the then owner. This quitclaim deed reserved the coal, oil, gas and other minerals underlying the land with right to mine and remove. This reservation would have no effect unless title to the oil and gas had been retained by Thomas M. McKemie in his 1907 deed to Walter S. Mooneyham and may well have been an oversight in view of the later affidavit, hereinafter described, made by Thomas M. McKemie.

The acts and conduct of the grantor Thomas M. McKemie at and subsequent to the time he gave the deed in question, that may be noticed, tending to show that he had no intention to reserve any part of the land, are as follows: (1) He made no specific reservation in the deed. (2) The evidence fails to disclose that, except for the quit claim deeds above mentioned, he ever did or said anything which amounted to a claim to any interest in the two-acre tract until after the recent oil development in Illinois when he joined with the heirs of Lou McKemie in giving the oil lease to E. S. Adkins which is here in controversy. (3) On July 28, 1922, he made an affidavit to the effect that he never at any time after he gave the deed to the two acres to Walter S. Mooneyham in 1907 had claimed any right, title or interest in said two acres; that he had included the said two acres in the mortgage to the Newton State Bank and Trust Company by mistake of the scrivener.

■ Plaintiff contends that the last mentioned affidavit is inadmissible in evidence because not binding on the plaintiff or on Lou McKemie's heirs and assigns and because Thomas M. McKemie is not a party to the suit. The affidavit is admissible as an act of Thomas M. McKemie bearing on his intention at the time he gave the deed to Mooneyham.

■ The evidence further shows a custom and usage in Franklin County before, at the time, and subsequent to the date of the deed in question by which the word "surface" and the words "surface only" were generally used in deeds and conveyances in that area made subject to prior coal or mineral deeds, when the intention was to convey all the estate that remained in the grantor. This evidence was received subject to objections but is now held admissible and considered.

■ From a consideration of the language of said deed from McKemie to Mooneyham and the extrinsic evidence bearing on the intention of the parties, I am convinced that the deed must be construed as having conveyed to Mooneyham all the interest McKemie had leaving nothing in him. Hence, plaintiff has no right or interest in the oil and gas underlying the two acres.

■ The conclusion stated is supported by the firmly established rule of construction long recognized and applied by the courts of Illinois that where there is doubt as to the construction of a deed it is to be interpreted most favorably to the grantee. McReynolds v. Stoats, 288 Ill. 22, 28, 122 N.E. 860; Boone et al. v. Clark, 129 Ill. 466, 21 N.E. 850, 5 L.R.A. 276; Casler et al. v. Byers, 129 Ill. 657, 22 N.E. 507; Kirby v. Wabash, etc., Ry. Co., 109 Ill. 412; Wise v. Wouters, 288 Ill. 29, 33, 123 N.E. 35.

Plaintiff's contention that the use of the word "only" with the word "surface" should be taken to remove all doubt that the intention of the parties was that the mineral estate remaining in the grantor should not be carried by the deed cannot be accepted. "Only" as there used was simply added insurance that the warranty in the deed should not be extended to the previously conveyed coal and coal rights to which the deed was made subject.

Plaintiff's complaint must be dismissed for want of equity and its application for an injunction is denied. Counsel for defendant may prepare and submit to counsel for plaintiff proposed findings, conclusions and decree in accord herewith, and, should agreement not be reached, submit same to the court, upon notice.